a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ROBERT EARL LYNN #314558,<br>Plaintiff | CIVIL DOCKET NO. 5:21-CV-02027<br>SEC P |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MARCUS MYERS,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 2, 5) filed by pro se Petitioner Robert Earl Lynn ("Lynn").  Lynn is incarcerated at the Raymond Laborde Correctional Center in Cottonport, Louisiana.  Lynn challenges a conviction and sentence imposed in the First Judicial District Court, Caddo Parish.

Because Lynn is not entitled to habeas relief, his Petition and Amended Petition (ECF Nos. 1, 5) should be DENIED and DISMISSED WITH PREJUDICE.

I.   Background

A non-unanimous jury convicted Lynn of manslaughter. *State v. Lynn*, 251 So.3d 1262, 1267, 52,125 La.App. 2 Cir. 8/15/18 (La.App. 2 Cir., 2018).  The facts and procedural history up to appeal were summarized by the Louisiana Second Circuit Court of Appeal as follows:

> The defendant's manslaughter conviction arises from an attempted armed robbery that went awry. The shooting victim, William David Carroll, was the roommate of the intended robbery victim, Harry

1

Luzader. Luzader was targeted when he was observed gambling at a local casino and accompanied home by the female codefendant, Shavez Taylor.

The incident began on July 27, 2014, when Taylor entered the Margaritaville Casino in Bossier City at 11:34 p.m. Her boyfriend, Kinoy Singleton, and the defendant followed her into the casino at 11:35 p.m. Their arrival and subsequent actions were recorded on the casino's video surveillance system. At 12:14 a.m. on July 28, 2014, Luzader walked into a men's restroom. Singleton entered the same restroom at 12:15 a.m. and exited at 12:16 a.m. At 12:17 a.m., the defendant entered the same restroom at about the same time that Luzader exited. Subsequently, the defendant, Singleton, and Taylor were seen together behind a pillar. Shortly thereafter, Taylor walked up to Luzader, who was playing blackjack. After speaking with him, she sat next to him at the blackjack table. A few minutes before 1 a.m., Singleton and the defendant departed the casino. At 1:27 a.m., Luzader and Taylor left the blackjack table. After sitting on a bench outside, they entered a taxi and departed the casino at 2:06 a.m.

Luzader testified that he decided to leave the casino because he was low on money. When he told Taylor he was going home to eat, she said that she was hungry. Luzader invited her to his home to eat. While they were in the taxi, Taylor texted on her cellphone, giving Singleton detailed directions to where they were going. Luzader resided in an upstairs garage apartment, which was located between houses on a secluded, dead-end street in Shreveport. When they arrived at their destination, Luzader had insufficient funds to cover the entire $13 cab fare.

Once in the apartment, Luzader introduced Taylor to his roommate, Carroll, who then retired to his bedroom. He later came back into the living area to tell Luzader that he had seen two guys walking up the driveway. Carroll went downstairs and outside to investigate. He returned and said that the men were at the wrong house. When Luzader asked him if he had locked the door downstairs, he replied affirmatively. Carroll again went to his bedroom while Luzader prepared food in the kitchen. Taylor went downstairs and unlocked the door. She and Luzader were seated with their food when two black males burst into the room. One of the men had a gun and demanded money. Luzader later described him as being about 6′1″ and "built like a linebacker," and wearing a white shirt with some kind of print on it. He described the second man as being of medium height and build, with short "spiderweb" dreads that looked like "he had a spider on his head." He wore a dark shirt. According to Luzader, the second man did not have a gun.

2

Luzader denied having any money and began struggling with the larger robber. He called out to Carroll that the man had a gun. Carroll was still in his bedroom but had begun to open the bedroom door to the living area. The gun discharged, and the bullet penetrated the door, striking Carroll in the chest. After the gunshot, Taylor and the two intruders fled. Upon seeing Carroll's condition, Luzader ran to a neighbor's home for help, and a call was placed to 911. Emergency services were dispatched at 2:59 a.m. Carroll was pronounced dead at the scene.

Thanks in large part to the casino's security surveillance system, the police were able to develop suspects swiftly. They first identified and interviewed Taylor. After obtaining search warrants for phone records and reading the text messages, they determined that she was a willing participant in the robbery and arrested her.

In her version of events, Taylor denied knowing about the robbery plans but admitted Singleton pointed out Luzader to her at the casino. She claimed that she unlocked the front door "for my benefit," so she would "feel safe," and that she was "shocked" when the men entered. She stated that Singleton entered first, wearing a "white stripy turquoise shirt" and white shorts. She identified the second man as the defendant and described him as wearing a grey shirt with black or grey shorts. She stated that both men were armed and that the defendant placed his gun to her head as she pleaded for her life. After she heard the gunshot, she stated that the defendant fled out the door, and that she grabbed her shoes and ran out of the apartment because she feared that Singleton would shoot her. She said that she and Singleton had had an intimate relationship for a year and that she knew him as "KD," "DaDDY" and "the Magnificent." She said she knew the defendant as "Trigger" and "Lu-Lu."

In September 2014, the defendant was indicted for second degree murder. By amended indictment, Taylor, Singleton, and the defendant were charged with second degree murder for killing Carroll during the attempted perpetration of an armed robbery.

In November 2015, the defendant filed a motion in limine to allow the introduction of "the Singleton affidavit." According to the motion, defense counsel had a sworn affidavit from Singleton, dated June 1, 2015, in which he stated the following:

3

> On the night of 7-27-14 Robert Lynn & I hooked up & went to the boat along with Shavez Taylor. Robert & I played the slots for a while & had something to drink after we were done Robert & I left the boat & went to our original destination which was the club. After being in the club for a little while I told Robert that I was leaving & if he was ready & he told me that he was staying & would ride home with his fam. This was the last time I saw & spoke with Robert.

In August 2016, the defendant filed a motion to sever his trial from those of his codefendants. He asserted that severance was necessary due to the state's intention to use Taylor's inculpatory statement against him and his desire to admit Singleton's exculpatory affidavit in his defense. At a hearing on August 31, 2016, the trial court ruled that it would sever only Taylor's trial due to her inculpatory statement against her codefendants. As to Singleton, the trial court ruled that severance was not warranted because Singleton's affidavit was not an admission, and it did not believe it would be admissible even if Singleton's trial was severed from that of the defendant. In its written ruling, which was issued the same day as the hearing, the trial court gave detailed reasons for granting the motion as to Taylor, but, as to Singleton, stated only that "[t]he Court notes that codefendants Robert Earl Lynn and Kinoy Damon Singleton may still be tried together." The trial court also issued a written ruling denying the defendant's motion in limine, finding that the Singleton affidavit was not admissible under La. C.E. art. 804(B)(3) or the jurisprudence.

The defendant and Singleton were tried together in September 2016. The defendant presented testimony from his barber that he had been cutting the defendant's hair since 1995 and that he had never worn it in the style known as spiderweb dreads. Also testifying for the defendant was a former inmate who had been incarcerated with Taylor and knew members of the defendant's family. She testified that Taylor told her that Singleton left the casino to go drop off the defendant at a club. However, Taylor also said that she did not look at the intruders who burst into the apartment and only heard Singleton's voice. Although the defendant filed a notice of alibi defense listing six potential alibi witnesses, none of them testified. While Singleton was convicted as charged of second degree murder, the jury returned a responsive verdict of manslaughter as to the defendant by a vote of 10 to 2.

*State v. Lynn*, 52,125 (La.App. 2 Cir. 8/15/18, 1–6), 251 So.3d 1262, 1264–67

(footnotes omitted), *writ denied,* 2018-1529 (La. 4/15/19); 267 So.3d 1129.

Lynn was adjudicated a second felony offender due to a 2008 conviction for distribution of a Schedule II controlled dangerous substance. *Id.* He was sentenced to a term of 40 years of imprisonment. *Id.*

On appeal, Lynn's attorney asserted that: (1) Lynn was deprived of his right to present a defense by the trial court's refusal to sever Lynn's trial from Singleton's ; (2) the court erred in excluding Singleton's affidavit; and (3) the trial court erred in permitting the State to present unreliable and misleading cell phone location data through the testimony of Lieutenant Mack. ECF No. 13-14 at 50. Lynn filed a pro se brief arguing that the State presented false testimony by Taylor, and misled the court about not having a cooperation agreement for her testimony. ECF No. 13-14 at 80. The appellate court affirmed the conviction and sentence. *Lynn*, 251 So.3d at 1267.

In the writ application to the Louisiana Supreme Court, Lynn's attorney raised only the claims regarding the severance and the Singleton affidavit. ECF No 13-5 at 3. Lynn filed a pro se brief asserting that the appellate court applied an impermissibly stringent standard by requiring him to prove that Taylor was testifying without a firm deal with the State. ECF No. 13-15 at 216. The Louisiana Supreme Court denied writs. *State v. Lynn*, 267 So.3d 1129 (La. 2019).

Lynn's attorney then filed an application for post-conviction relief arguing: (1) actual innocence; (2) non-unanimous jury; (3) failure to disclose a plea deal with Taylor; (4) exclusion of Singleton's affidavit; and (5) several claims of ineffective assistance of counsel. ECF No. 13-15 at 247. The application was denied. ECF No. 13-15 at 329.

In a pro se writ application to the Louisiana Second Circuit Court of Appeal, Lynn alleged that the trial court erred in denying relief without an evidentiary hearing and prematurely denied the nonunanimous jury verdict claim. ECF No. 13-16 at 3. The Second Circuit denied Lynn's writ application on the showing made. ECF No. 13-16 at 120.

Lynn presented the same claims in a writ application to the Louisiana Supreme Court. ECF No. 13-16 at 329. The application was denied without comment. *State v. Lynn*, 2021-00604 (La. 12/21/21), 329 So.3d 830.

At the time of filing his § 2254 Petition (ECF No. 1), Lynn's writ application was pending in the Louisiana Supreme Court. The Court granted a motion to stay his "protective" Petition until the Louisiana Supreme Court denied writs. ECF No. 3. The stay has been lifted, and the State responded to the Petition. ECF No. 13.

II. <u>Law and Analysis</u>

  A. <u>Lynn fails to state a viable claim of innocence.</u>

Lynn alleges that his conviction is unconstitutional under the federal and state constitutions because he is innocent. First, "[f]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Thus, to the extent Lynn alleges his conviction is unlawful under Louisiana's constitution, it is not cognizable under § 2254.

Next, there is no freestanding claim of actual innocence under § 2254. *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993); *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 573 (2018); *In re: Swearingen*, 556 F.3d 344,

6

348 (5th Cir. 2009). An actual innocence claim does not create a right to habeas relief absent an independent, substantive constitutional violation. *Dowthitt v. Johnson*, 230 F.3d 733, 741-42 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *Rocha v. Thaler*, 626 F.3d 815, 825-26 (5th Cir. 2010), *cert. denied*, 565 U.S. 941 (2011) (discussing the distinction between gateway actual innocence claims and constitutional claims for habeas relief). Lynn's claim of actual innocence is not one for which he may obtain relief.

However, a claim of factual innocence may serve as a gateway to allow federal habeas review on the merits of constitutional claims that are otherwise barred. *Herrera v. Collins*, 506 U.S. at 404-05; *Rocha*, 626 F.3d at 825-26. A finding of a fundamental miscarriage of justice needed to overcome a procedural default requires a petitioner to "make a persuasive showing that he is actually innocent of the charges against him." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). He "must show that, as a factual matter, he did not commit the crime for which he was convicted." *Id.*

A petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To make a credible claim of actual innocence, a petitioner must support his claim with evidence not previously presented at trial through trustworthy eyewitness testimony, exculpatory scientific evidence, credible declarations of guilt,

7

or physical evidence. *Id.* A petitioner must establish his factual innocence—not simply that the evidence at trial was legally insufficient to convict. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Lynn asserts claims that are unexhausted, procedurally defaulted, and barred from review absent a showing of cause, prejudice, or a fundamental miscarriage of justice. *See Murray v. Carrier*, 477 U.S. 478 (1986). Thus, a plausible actual innocence claim might allow for review of those otherwise barred claims. But Lynn fails to make a plausible claim of actual or factual innocence. Lynn does not support his innocence claim with any new, reliable evidence for which no reasonable juror would have convicted him. *Fairman*, 188 F.3d at 644.

Lynn's claim of innocence is based on the evidence presented at trial and the inadmissible Singleton affidavit. Evidence is not "new" for purposes of establishing actual innocence if that evidence "was always within the reach of [petitioner's] personal knowledge or reasonable investigation." *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 2714 (2019) (quoting *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2018). Lynn fails to establish his actual innocence through "new evidence" that would allow him to overcome procedural bars to the following claims.

### B. Lynn's claim regarding cell phone records and Lt. Mack's testimony is procedurally defaulted.

Lynn claims that the trial court erred in allowing the State to present "unreliable and misleading cellphone location information" through the testimony of Lieutenant Mack rather than the cell phone company.

8

Before seeking federal habeas corpus relief, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); 28 U.S.C. § 2254(b)(1). To provide the State with this necessary "opportunity," the prisoner must "fairly present" his claim to the appropriate state court—including the highest court—in a manner that alerts that court to the federal nature of the claim. *Reese*, 541 U.S. at 29-32 (rejecting the argument that a petitioner "fairly presents" a federal claim, despite failing to give any indication in his appellate brief of the federal nature of the claim through reference to any federal source of law, when the state appellate court could have discerned the federal nature of the claim through review of the lower state court opinion); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (claim for federal relief must include reference to a specific constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief).

Lynn's claim regarding the cell phone records was presented in his appeal to the Second Circuit Court, but it was not raised in his writ application to the Louisiana Supreme Court. *See* ECF No 13-15 at 3, 216. Because Lynn's claim was not presented to the highest state court, it is not exhausted. Any attempt to return to the Louisiana Supreme Court to raise the claim would be barred by Louisiana Supreme Court Rule X, §5(a), which provides a 30-day period for filing writ applications for review of a court of appeal judgment.

A new application for post-conviction relief would also be untimely. La. C. Cr. P. art. 930.8. Such untimeliness provides an independent and adequate state procedural ground for barring federal habeas relief. *Glover v. Cain*, 128 F.3d 900 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998).

Because Lynn's claim regarding cell phone records was not exhausted and the state courts would now find his claims procedurally barred, it is considered procedurally defaulted. *Kittelson v. Dretke*, 426 F.3d 306 (5th Cir. 2005); *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir. 1999). Absent a showing of cause and actual prejudice, or that the failure to review the claim would result in a fundamental miscarriage of justice, Lynn cannot overcome the procedural default. *Glover*, 128 F.3d at 902.

Nothing in the record suggests that Lynn can satisfy the showing of cause and resulting prejudice. There is no indication of any external impediment that prevented him from properly exhausting the claim. *See Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008), *cert. denied*, 556 U.S. 1239 (2009) (explaining "external impediments include active governmental interference or the reasonable unavailability of the factual or legal basis for the claim"). And as previously discussed, Lynn does not make the colorable showing of actual innocence needed to establish that a fundamental miscarriage of justice would result if this claim is not reviewed. Thus, Lynn's actual innocence claim is not a gateway through which this Court can reach his procedurally barred claim regarding cell phone records and the testimony of Lt. Mack. *Herrera* 506 U.S. at 404-05; *Rocha*, 626 F.3d at 825-26.

### C. Lynn cannot establish a Brady violation.

Lynn claims that the State failed to disclose a plea deal with Taylor and other exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). To satisfy a *Brady* violation, a petitioner must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

First, Lynne briefly mentions Singleton's affidavit, but does not indicate how the trial court's ruling excluding Singleton's testimony amounts to a *Brady* violation. To the extent Lynn infers any connection, his assertion is conclusory. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000).

Lynn also asserts that the State failed to disclose a plea deal it made with Taylor. The "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The *Brady* rule applies to exculpatory evidence as well as to impeachment evidence. *See U.S. v. Bagley*, 473 U.S. 667, 676 (1985). Impeachment evidence includes any agreements by the government with witnesses for their testimony. *Giglio v. United States*, 405 U.S. 150 (1972). Undisclosed impeachment evidence will more likely be material where the prosecution's case is primarily based on a single witness without other corroboration. *See Reeder v. Vannoy*, 978 F.3d 272, 278 (5th Cir. 2020), *cert. denied*, 142 S.Ct. 752 (2022).

On August 31, 2016, the parties, attorneys, and court discussed severing Taylor's trial from the trial of Lynn and Singleton. ECF No. 13-6 at 61. Then, on September 12, 2016, the prosecution announced that Lynn and Singleton would be tried first; that Taylor would testify at their trial; and that the State had "no plea agreement or anything of the sort" with Taylor. ECF No. 13-6 at 55-56. Taylor's counsel explained that the State had tendered an offer, which Taylor rejected, and that she would testify without invoking her Fifth Amendment rights. *Id.* at 56. The following day, Singleton filed a "reveal-the-deal" motion. ECF No. 13-7 at 231. Again, the prosecution stated that there was "no offer outstanding" and "no deal on the table." *Id.* The State had previously offered Taylor a recommended sentence of no less than 30 years for a manslaughter plea. *Id.* at 232. However, the offer was rejected. *Id.* After Taylor's rejection, the State "withdrew all offers." *Id.*

Nonetheless, Lynn's attorney presented in his opening statement that Taylor "has made a deal with the State to testify in these proceedings. . . . " ECF No. 13-9 at 144. He suggested that the jury ask themselves what she is getting for her testimony or what she expects to receive from the State for her testimony. *Id.* Counsel went on to argue that Taylor would testify because "she's going to get some type of sweetheart deal in exchange for her testimony." *Id.* at 146. He argued that prosecutors "made a deal with the devil in this case, with Shaves Taylor." *Id.*

Taylor testified that there was no plea offer "on the table." ECF No. 13-11 at 110. She stated that she rejected a plea offer of 30 years for manslaughter and had

12

no other offer or deal. Taylor testified that she had a trial date pending and that she was waiving her Fifth Amendment rights to testify. *Id.* at 111.

On cross-examination, Taylor again testified that she had no plea deal and had turned down the State's offer, explaining that her "life is worth fighting for." ECF No. 13-12 at 18. Taylor was asked what she thought would happen if Lynn and Singleton were convicted. She stated that she did not know and could not predict the future. ECF No. 13-12 at 77. She agreed that she would like to see her charges dismissed. *Id.*

In closing arguments, Lynn's attorney told the jury that Taylor would tell the prosecutors after trial: "Hey, I held up my end of the bargain. I helped you convict Mr. Singleton and Mr. Lynn of murder, now you hold up your end of the bargain." ECF No. 13-1 at 155. Despite Taylor's sworn testimony that there was no plea agreement or offer and the State's representation that it had no deal with Taylor, Lynn's attorney insisted that Taylor was testifying because of some deal. ECF No. 13-13 at 155.

At Lynn's sentencing, Judge O'Callaghan commented: "The Court does feel and does consider that Ms. Taylor did testify without a firm deal in place; however, she was ultimately given consideration for her testimony by the State and ultimately received a 20-year, hard labor sentence as a consequence of that testimony." ECF No. 13-14 at 19. In fact, Taylor pleaded guilty to armed robbery with a sentence of 20 years. ECF No. 13-15 at 350.

The transcript from Taylor's guilty plea is a part of the record in this case because Lynn attached a copy to his motion to reconsider the denial of post-conviction relief. At Taylor's sentencing, the judge stated, "Ms. Taylor, your lawyer negotiated an extremely favorable agreement for you based on your testimony at the trial of your original codefendants. I know it seems harsh but compared to what this court thinks would have happened after a trial your lawyer did a great job for you." ECF No. 13-15 at 355.

On appeal, Lynn asserted that Taylor lied about having no deal or agreement with the State. Because the Louisiana Supreme Court denied writs without comment, the Court must "look through" to the "last related state court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018). The Second Circuit denied the claim as meritless, noting that the State and Taylor both admitted that a plea offer had been made but rejected. The court noted that the "bare fact that Taylor subsequently pled guilty to manslaughter and was sentenced to 20 years is not evidence that a plea agreement existed at trial and induced her to testify against the defendant." ECF No. 13-14 at 158.

Lynn raised the same *Brady* claim in his application for post-conviction relief, and it was again denied on the merits. The trial court noted that Lynn offered no evidence to contradict Taylor's testimony under oath that she had no offer or deal at the time of his trial. ECF No. 13-15 at 258.

The state courts clearly found no merit to Lynn's claim that the State failed to disclose some agreement with Taylor in violation of *Brady* and its progeny. Because the claim was adjudicated on the merits, it is subject to federal habeas review under §2254(d). Lynn does not show that the denial of this claim by the state courts was contrary to or involved an unreasonable application of *Brady* and its progeny, nor does he show any unreasonable determination of the facts in light of evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d).

The State informed the court and parties that Taylor had rejected a previous plea offer and there were no pending deals. It even disclosed the terms of the prior plea negotiations. Taylor's testimony was consistent with the State's contention. Taylor's attorney also affirmed that there was no pending offer. Even if she hoped for a benefit from her testimony, and she ultimately received a better deal than previously offered, there is no indication that the State violated its obligations under *Brady/Giglio*.

Lynn's *Brady* claim is based solely on speculation. Allegations that are merely conclusory or are purely speculative cannot support a *Brady* claim. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (citing *Hughes v. Johnson*, 191 F.3d 607, 629-30 (5th Cir. 1999); *United States v. Pretel*, 939 F.2d 233, 240 (5th Cir. 1991)).

### D. Lynn fails to establish ineffective assistance of counsel.

Lynn alleges that he received ineffective assistance of counsel because: (1) his attorney failed to obtain a severance of Lynn's case from Singleton's; (2) failed to present Singleton's testimony or affidavit at trial; (3) failed to properly investigate

15

alibi witnesses; (4) failed to properly investigate cell phone tower evidence; (5) failed to present additional evidence of Lynn's hairstyle before and during the night of the killing; and (5) failed to investigate any potential plea deal between Taylor and the State. ECF No. 5 at 8.

Lynn's ineffective assistance claims were not exhausted and are now procedurally defaulted. Although Lynn's claims were raised in his post-conviction application, he did not include them in his writ applications to the Second Circuit or the Louisiana Supreme Court. The State was not provided with an opportunity to review Lynn's federal ineffective assistance claim. *Reese*, 541 U.S. at 29-32; *Gray*, 518 U.S. at 162-63. The state courts would now find these claims procedurally barred. *Kittelson*, 426 F.3d at 306; *Bledsue*, 188 F.3d at 254-55.

Absent a showing of cause and actual prejudice, or that the failure to review the claim would result in a fundamental miscarriage of justice, Lynn cannot overcome the procedural default. *Glover*, 128 F.3d at 902. Lynn does not show cause and resulting prejudice. There is no indication of any external impediment that prevented him from properly exhausting the claim. *See Hughes*, 530 F.3d at 341.

And as previously discussed, Lynn does not make the colorable showing of actual innocence needed to establish that a fundamental miscarriage of justice would result if this claim is not reviewed. Thus, Lynn's actual innocence claim is not a gateway through which this Court can reach his procedurally barred claim regarding his ineffective assistance claims. *Herrera* 506 U.S. at 404-05; *Rocha*, 626 F.3d at 825-26.

Even if Lynn had exhausted or was otherwise entitled to review of his claims, he cannot meet the doubly deferential standard of review under §2254(d) and *Strickland v. Washington*, 466 U.S. 668 (1984). Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of § 2254(d)(1). *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000); *see also Huricks v. Taylor*, No. 08–51050, 2011 WL 857015, at * 3 (5th Cir. 2011) (citing *Ladd v. Cockrell*, 311 F.3d 349, 357 (5th Cir. 2002)). The "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not whether the reviewing court itself believes that trial counsel's performance violated *Strickland*'s standards. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

A petitioner must show both deficient performance and resulting prejudice to establish ineffective assistance of counsel. He must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, at 687-88. The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997), *cert. denied*, 522 U.S. 1120 (1998).

The prejudice prong requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The record shows—and the trial court acknowledged—that Lynn's attorney was vigorous in his efforts. He filed a motion to sever and a motion requesting that Lynn be the last defendant tried. ECF No. 13-16 at 307. Counsel sought to introduce Singleton's affidavit, but the court denied the motion. *Id.* He filed a notice of an alibi defense but determined the alibi testimony would do more harm than good. *Id.* Counsel filed a motion to preclude the introduction of scientific evidence regarding locations gathered by cell phone providers; a motion to disclose expert witnesses; and a motion for an evidentiary hearing regarding the introduction of cell tower data. ECF No. 14-16 at 307. Lynn's attorney called a barber to testify regarding Lynn's hairstyle. Lynn does not show that additional testimony would have affected the outcome. Finally, the record was abundantly clear that there was no plea agreement pending at the time of trial.

The state court found that Lynn's contentions do not show "that trial counsel made any errors, let alone that [counsel] fell below any particular standard." ECF No. 13-16 at 326. The fact that counsel did not prevail on his motions does not render his performance deficient. *See Bustos v. Quarterman*, 2007 WL 701028, *5 (W.D. Tex. 2007) ("The mere fact that counsel did not prevail on his motion to suppress does not render his performance deficient"). Lynn has not established deficient performance.

Likewise, Lynn cannot establish prejudice. He received a manslaughter conviction as opposed to second-degree murder, which Singleton received.

18

Because Lynn cannot meet either *Strickland* prong and cannot show that the state courts adjudication of his claim was contrary to or an unreasonable application of *Strickland*, the ineffective assistance claim would be subject to dismissal.

### III. Conclusion

Because Lynn fails to establish entitlement to habeas relief, IT IS RECOMMENDED that his Petition and Amended Petition (ECF Nos. 1, 5) be DENIED and DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and

Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

SIGNED on Wednesday, April 5, 2023.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE